# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

UNITED STATES OF AMERICA

vs.                                                    CRIMINAL NO. 3:98-CR-101WN
                                                       CIVIL ACTION NO. 3:03-CV-796WN

STEVE D. CALDWELL


## ORDER

Before the court is the petition of defendant Steve D. Caldwell for writ of habeas corpus based on a collateral attack of his conviction and sentence.  A collateral attack on a federal criminal conviction consists of a motion to correct, vacate, or set aside sentence under 28 U.S.C. § 2255;[1] *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000).   Relief under § 2255  is warranted for any error that "occurred at or prior to sentencing."  *Cox v. Warden, Federal Detention Center*, 911 F.2d 1111, 1113 (5th Cir. 1990), citing *United States v. Flores*, 616 F.2d 840, 842 (5th Cir. 1980).

---

[1]Title 28 U.S.C. § 2255 provides in pertinent part that, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

# BACKGROUND

Steven D. Caldwell was indicted in an eight count indictment on November 4, 1998, which charged him with six counts of mail fraud pursuant to Title 18 U.S.C. §§ 1341,[2] 1346[3] and Title 18 U.S.C. § 2,[4] and with two counts of money laundering under Title 18 U.S.C. § 1957.[5]  Caldwell's indictment charged that he had "intentionally devised and carried out a scheme": (1) to defraud the taxpayers and

---

[2]Title 18 U.S.C. § 1341 provides that, "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

[3]Title 18 U.S.C. § 1346 was enacted in 1988 in response to *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), a pre-§ 1346 case in which the United States Supreme Court held that § 1341 was "limited in scope to the protection of property rights," and reversed the defendants' mail fraud convictions based on a scheme to deprive the citizens and government of Kentucky of honest services.  Section 1346 provides that, "[f]or the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

[4]Title 18 U.S.C. § 2 provides that, "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.  (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.  To sustain a conviction for aiding and abetting in violation of 18 U.S.C. § 2, the government must show beyond a reasonable doubt that the defendant associated with a criminal venture, participated in that venture, and sought to make that venture succeed.  *United States v. Murray*, 988 F.2d 518, 522 (5th Cir. 1993); *United States v. Parekh*, 926 F.2d 402, 406 (5th Cir. 1991).

[5]Title 18 U.S.C. § 1957(a) provides that, "[w]hoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

officials of the State of Mississippi, the Board of Directors for [Magnolia Venture], and others to obtain money and property by means of false and fraudulent representations, pretenses and promises; and (2) [to] depriv[e] [Magnolia Venture] of its intangible right of honest services by breaching his fiduciary duty owned to [Magnolia Venture] as [its] Chairman of the Board of Directors and Chief Executive Officers.  The indictment set forth in detail criminal conduct attributed to Caldwell, particularly with regard to his having devised a scheme to siphon a percentage of government funding to his own use by including the amount in his own salary.  The indictment also charged that Caldwell knowingly mailed certain letters via the United States Postal Service for the purpose of executing the scheme to obtain money and to deprive of honest services.  These accusations supplied the jurisdictional basis for federal court prosecution.  Two counts of mail fraud were dismissed prior to trial.

At trial the United States presented testimonial and documentary evidence regarding Caldwell's activities from approximately March 1993, to December 1996, in connection with the corporate entities that were created by the Mississippi Legislature at Caldwell's behest pursuant to the Venture Capital Act of 1994.[6]   Ultimately,

---

[6]Miss. Code Ann. § 55-77-3 provides in pertinent part that, "[i]t is the purpose of this chapter to establish the Magnolia Capital Corporation, the Magnolia Venture Capital Corporation and the Magnolia Venture Capital Fund Limited Partnership for the purposes of increasing the rate of capital formation; stimulating new growth-oriented business formations; creating new jobs for Mississippi; developing new technology; enhancing tax revenue for the state; and supplementing conventional business financing. The Magnolia Capital Corporation, the Magnolia Venture Capital Corporation, and the Magnolia Venture Capital Fund Limited Partnership shall be instrumentalities of the State of Mississippi and their operations and activities shall be subject to review by the State Auditor of Public Accounts, the Attorney General of Mississippi, the Mississippi Ethics Commission, the Joint Legislative Committee on Performance Evaluation and Expenditure Review, and any other state officer or agency as provided by law."

Caldwell was convicted of three counts of mail fraud[7] in violation of Title 18 U.S.C. §§ 1341 and 1346 which require proof of at least these elements, "(1) having devised or intended to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Carter v. United States*, 530 U.S. 255, 261, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). The defendant must also have had a specific intent to commit fraud. *United States v. RICO Industries, Inc.*, 854 F.2d 710, 712 (5th Cir. 1988).

Caldwell also was convicted of one count of money laundering in violation of Title 18 U.S.C. § 1957, which prohibits "knowingly engag[ing] in a monetary transaction in criminally derived property of a value greater than $10,000 [that] is derived from specified unlawful activity." These convictions and Caldwell's sentence were affirmed by the United States Court of Appeals for the Fifth Circuit. *See United States v. Caldwell*, 302 F.3d 399 (5th Cir. 2002).

The relief Caldwell now seeks under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). A criminal defendant seeking relief from his conviction or sentence under § 2255 must establish one of the following: (1) his sentence was imposed in violation of the Constitution or laws of the

---

[7]Substantive mail fraud counts under Title 18 U.S.C. § 1341 require the government to prove a scheme to defraud. *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001). Title 18 U.S.C. § 1346 provides that a scheme to defraud includes "a scheme or artifice to deprive another of the intangible right of honest services."

4

United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

Caldwell launches this collateral attack on his convictions and sentence, claiming ineffective assistance of counsel during pretrial, trial, sentencing and on direct appeal. Specifically, Caldwell contends that counsel was ineffective for failing to challenge Title 18 U.S.C. §§ 1341 and 1346 as unconstitutionally vague as applied, and for failing to advise Caldwell to proceed to a bench trial on stipulated facts. Caldwell also claims that the cumulative effect of counsel's alleged errors was prejudicial. For the reasons that follow, this court finds that the writ should not issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court has established certain legal principles governing ineffective assistance of counsel claims. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), the Supreme Court has stated that an ineffective assistance of counsel claim has two components: (1), a petitioner must show that counsel's performance was deficient, and (2), that the deficiency prejudiced the defense. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." The Court has never articulated any specific guidelines for appropriate attorney conduct and instead has emphasized that "the proper measure of attorney performance

5

remains simply reasonableness under prevailing professional norms."   *Wiggins*, 539 U.S. at 521.

In order to establish that counsel's representation fell below an objective standard of reasonableness, a petitioner must overcome a strong presumption that his trial counsel's conduct fell within a wide range of reasonable professional assistance. *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Strickland*, 466 U.S. at 687-91; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); and *Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1995).  The Fifth Circuit exercises deference when scrutinizing counsel's performance, making every effort to eliminate the distorting effects of hindsight.  *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993);  *Burger v. Kemp*, 483 U.S. 776, 789, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987);  *Strickland*, 466 U.S. at 689; *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).  So, the presumption is that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions.  *Strickland*, 466 U.S. at 690;  *Drew v. Collins*, 964 F.2d 411, 422 (5th Cir. 1992);  *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992).

An attorney's strategic choices, usually based on information supplied by the defendant and from a thorough investigation of relevant facts and law, are virtually unchallengeable.  Counsel is neither required to advance every non-frivolous argument, nor to investigate every conceivable matter, nor to assert patently frivolous arguments.  *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir.1995) (stating that counsel cannot be deficient for failing to press a frivolous point); *United States v.*

6

*Gibson*, 55 F.3d 173, 179 (5th Cir.1995) (stating that the Sixth Amendment does not require counsel to file meritless motions).  Moreover, counsel is not required to exercise clairvoyance during the course of a criminal trial.  *Sharp v. Johnson*, 107 F.3d 282, 290 n. 28 (5th Cir. 1997).

Finally, even if counsel's performance falls below an objective standard of reasonableness, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 691-92.  Accordingly, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."  *Strickland*, 466 U.S. at 692.

If the convicted defendant fails to satisfy both prongs of the *Strickland* test, then the failure to establish either deficient performance or prejudice under that test makes it unnecessary to examine the other prong.  *Strickland*, 466 U.S. at 700;  *Green*, 116 F.3d at 1122.

### THE PETITIONER'S ORIGINAL CHALLENGES

### A.  Failure to Challenge Indictment on Grounds that Section 1341 Is Unconstitutionally Vague

Caldwell contends that his sentence violates the Sixth Amendment of the United States Constitution.[8]  Criminal defendants have the Sixth Amendment right to

---

[8]The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, *and to have the assistance of counsel for his defense* (emphasis added).

effective assistance of counsel at every critical stage of the proceedings against them.
*Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).  The Sixth Amendment
ensures that a defendant has the assistance necessary to justify reliance on the
outcome of the proceeding.  *Strickland*, 466 U.S. at 689.  The absence or denial of
counsel at any critical stage of a criminal proceeding represents one of the egregious
circumstances that require the presumption of prejudice.  *Id.*, at 692.   Caldwell claims
to be so prejudiced.

Specifically, Caldwell contends that his attorney could have challenged, but did
not, the indictment prior to trial or on direct appeal on the grounds that Title 18 U.S.C.
§ 1341 was unconstitutionally vague as applied in this case and that, being
unconstitutionally applied, no predicate remained for the charge of money laundering
under Title 18 U.S.C. § 1957.  Caldwell submits that his attorney did not fully research
the applicable law to determine that the mail fraud statute may be constitutionally
deficient when based on charges which rely on the doctrines of deprivation of "honest
services" and "intangible rights."  According to Caldwell, the readily available authority
not researched by counsel holds that the "honest services" provision of the mail fraud
statute is void for vagueness and that a money laundering conviction cannot stand
where the predicate mail fraud offense must be reversed.  While this view may have
enjoyed short-lived acceptance in some jurisdictions other than the Fifth Circuit, the
enactment of Title 18 U.S.C. § 1346 by Congress obviates Caldwell's arguments on
this point (see footnote 3).

The first case cited by Caldwell in support of this contention is that of *United States v. Handakas*, 286 F.3d 92 (2d Cir. 2002), a case involving an indictment where the defendant was charged with one count of illegally structuring payments greater than $100,000 for a twelve-month period from May 1996, to May 1997, and in a second count in the indictment for the same offense from a period covering May 1997, to May 1998.  In the first part of its ruling in *Handakas*, the Second Circuit found the indictment to have been defective for multiplicity, concluding that "no provision of the statute[9] indicates that a single course of structuring can be segmented based on 12-month intervals" or any other period of time ... ."   *Id.*, at 98.  The case was remanded for resentencing on one count instead of two.

The part of the Second Circuit's ruling which pertains to the instant case deals with the mail fraud statute and the sufficiency of notice to both the public and to law enforcement as to what constitutes prohibited activity.  The *Handakas* opinion, ultimately overruled on this point,[10] concluded that Title 18 U.S.C. § 1341 was unconstitutionally vague because different jurisdictions had found a wide variety of conduct to run afoul of the statute.  The Second Circuit relied in no small part upon the dissenting opinion of Fifth Circuit Judge Grady Jolly in the case of *United States v.*

---

[9]The Second Circuit noted that the penalty enhancement provision of Title 31 U.S.C. § 5324(d)(2) on which the government apparently relied, provides that a structuring offense is "aggravated" where the structured funds: [1] exceed $100,000 within a 12-month period, and [2] are "part of a pattern of any illegal activity."  That provision, said the Second Circuit, was intended to enhance sentences for more serious structuring offenses; it was not a device for segmenting and compounding a single offense.

[10]*See United States v. Rybicki*, 354 F.3d 124 (2nd Cir. 2003).

9

*Brumley*, 116 F.3d 728, 733 (5th Cir. 1997) (en banc) (listing cases applying "honest services" in varying ways).  The question posed by the Second Circuit was whether Title 18 U.S.C. § 1341, as it is written, provided notice sufficient to alert "ordinary people [to] what conduct is prohibited," citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).   The offending language of the indictment said the Second Circuit involved the terms "honest services" and "intangible right." The Second Circuit quoted the dissenting opinion of Judge Jolly in *Brumley* as follows:

> If we were the first panel attempting to discern the meaning of the phrase "honest services" in § 1346, we would likely find that part of the statute so vague as to be unconstitutional on its face. Section 1346 specifies that a "scheme to defraud" includes the deprivation of another's "intangible right of honest services," and in that way expresses legislative intent to expand the offense beyond deprivations of money or property; but it does not say what "honest services" may be, or when they are withheld deceitfully.  The plain meaning of "honest services" in the text of § 1346 simply provides no clue to the public or the courts as to what conduct is prohibited under the statute.

The Second Circuit then noted, as Judge Jolly had observed in 1997, that the terms "intangible right" and "honest services" cannot be found in Black's Law Dictionary, the United States Code, or (for that matter) any federal statute other than § 1346, citing *Brumley*, 116 F.3d at 742 (Jolly, J., dissenting).   That observation, said the Second Circuit, remains accurate today.  Clearly, " 'honest services' has not achieved the status of a commonly accepted and recognized term of art which Congress could have been relying upon in using these words.... The phrase is ... inherently undefined and ambiguous." *Id.* at 742, 746 (Jolly, J. dissenting).

*Handakas* was decided in March of 2002.   Caldwell was convicted in 1999 and sentenced on August 23, 1999.  Thus, at the time of his indictment and at the time of

his direct appeal, Caldwell's counsel would not have had access to the *Handakas* opinion had he undertaken to research the law of other Circuit Courts.  Of course, even if the petitioner's attorney had had access to and had presented the *Handakas* decision for this court's consideration at the time of his indictment or post trial on motions prior to direct appeal, this court was bound only by decisions of the Fifth Circuit and the United States Supreme Court.  *See Peregoy v. Amoco Production Company, a Division of Standard Oil of Indiana*, 742 F.Supp. 372, 375 (E.D. Tex. 1990).   Decisions of other Circuit Courts are merely persuasive authority and not binding on this court.  *See Garcia v. Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir. 2001) (noting that decisions of other Circuit Courts are persuasive, not binding).  Moreover, at the time Caldwell was before this court, the Fifth Circuit was not in step with the view adopted in *Handakas* decision, and there simply was no basis for adopting it.

Not only was the *Handakas* decision not binding on this court, its conclusions with regard to Title 18 U.S.C. §§ 1341 and 1346 and its holding with regard to inadequate notice and the lack of explicit standards eventually were rejected by the Second Circuit in *United States v. Rybicki*, 354 F.3d 124 (2nd Cir. 2003).   The Second Circuit in *Rybicki* noted that Congress had enacted § 1346 to overrule the United States Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 358, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), and to reinstate the intangible rights to honest services theory under the mail fraud statute.  *Rybicki*, 354 F.3d at 133-34.

In *McNally*, the United States Supreme Court held that the then-existing mail fraud statute did not criminalize schemes "designed to deprive individuals, the people,

11

or the government of intangible rights, such as the right to have public officials perform their duties honestly." *McNally*, 483 U.S. at 358.  So, under *McNally*, schemes to deprive others of their intangible rights to good government and honest services were beyond the mail and wire fraud proscriptions.  *Rybicki*, 354 F.3d at 134.   Then, Congress enacted § 1346 and re-criminalized mail and wire fraud schemes to deprive others of the intangible right to honest services which had been protected before *McNally*. *Rybicki*, 354 F.3d at 138.

In the instant case Caldwell has followed the path of *McNally* only as far as the *Handakas* decision, without proceeding to *Rybicki* and acknowledging that the approach he now pursues before this court is wholly without merit.  The effect of *McNally* regarding § 1341 was repealed when Congress amended the mail fraud statute to include the "honest services" provision of § 1346.  *United States. v. Ratcliff* 381 F.Supp.2d 537, 543 (M.D. La. 2005).  *See also United States v. Daniels*, 247 F.3d 598 (5th Cir.), *cert. denied,*  534 U.S. 928, 122 S.Ct. 288, 151 L.Ed.2d 212 (2001), noting that the Fifth Circuit previously had sustained against a void-for-vagueness challenge to Title 18 U.S.C. § 1341.  The *Daniels* Court also noted that there was nothing "inherently vague in the notion of a general anti-fraud statute." *Id.*, at 600. *See United States v. Reyes*, 239 F.3d 722, 736 (5th Cir. 2001), upholding lower court finding that the defendant had devised a scheme to surreptitiously and unlawfully benefit from his position on the city council in violation of § 1341;  *United States v. Manges*, 110 F.3d 1162, 1171 (5th Cir. 1997) (numerous courts and commentators have interpreted Section 1346 as validating the honest services theory in the context

12

of official corruption); and *United States v. Gray*, 96 F.3d 769, 776-77 (5th Cir. 1996),

holding that § 1346 was not vague nor overly broad, citing *United States v. Waymer*,

55 F.3d 564 (11th Cir. 1995).

Thus, in light of the foregoing authority, this court finds no basis for concluding

that Caldwell's attorney was ineffective when he did not argue at any stage of

Caldwell's prosecution that Title 18 U.S.C. § 1341, as supplemented by § 1346, was

unconstitutionally vague, or, *ipso facto* that Caldwell's money laundering conviction

required reversal.  Caldwell's arguments are rooted in *McNally v. United States*, 483

U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which Congress legislatively

overruled by enacting Title 18 U.S.C. § 1346 and defining a scheme to defraud to

include a scheme "to deprive another of the intangible right of honest services."

### B.  Failure to Advise Petitioner to Proceed to a Bench Trial on Stipulated Facts

Caldwell contends that his attorney rendered ineffective assistance because he

did not advise Caldwell to have a non-jury trial on stipulated facts in order to preserve

certain issues on appeal, and without foreclosing the possibility of a sentence

reduction for acceptance of responsibility.  Caldwell presumes that he could have

made this choice unilaterally if only counsel had made him aware of this procedure.

A criminal defendant is entitled to have a trial by a jury of his peers.[11]  If the defendant decides to proceed as Caldwell argues, the decision to waive the jury trial is governed by Rule 23(a) of the Federal Rules of Criminal Procedure.   Rule 23(a) provides that "[i]f the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves."  Under this Rule, the United States would have had to agree that Caldwell could proceed on stipulated facts to a bench trial.  Moreover, this court's approval would have been required.   This court is under no obligation to conduct bench trials in criminal cases at all, even in cases where the defendant and the government both agree to such a format.   *See United States v. Dunn*, 345 F.3d 1285, 1295 (11th Cir. 2003).  In the instant case the United States asserts that it would not have agreed to such a format.  Thus, Caldwell cannot presume that he would have been permitted to proceed in this manner.

Section 3E1.1 of the United States Sentencing Guidelines (USSG) provides for reduction of a convicted defendant's offense level, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  Comment 2 to USSG § 3E1.1(a) states that, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."

---

[11]Article III, Section 2, Clause 3 of the United States Constitution provides that, "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."

14

The Guidelines allow for "rare situations" where the defendant accepts responsibility even though he precedes to trial.  Comment 2 explains that "[t]his may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)."  *United States v. Washington*, 340 F.3d 222, 228 (5th Cir. 2003).

In the instant case Caldwell went to trial and put the United States to its proof. Now, after having lost at trial, Caldwell contends that he went to trial only because his attorney was ineffective.   However, even if Caldwell's attorney had recommended proceeding to a bench trial, this alone would not have entitled Caldwell to a bench trial.  There is nothing to show that the United States or this court would have agreed to this as is required by Rule 23(a).  Moreover, even a defendant who enters a guilty plea is not entitled to a reduction under § 3E1.1 as a matter of right.   *United States v. Shipley*, 963 F.2d 56, 58 (5th Cir.), *cert. denied*, 506 U.S. 925, 113 S.Ct. 348, 121 L.Ed.2d 263 (1992);  *United States v. Brigman*, 953 F.2d 906, 908 (5th Cir. 1992). Caldwell has not been denied anything to which he was entitled as a matter of right.

Finally, in this court's view, whether Caldwell's counsel chose to go to trial with a jury or without a jury on stipulated facts is a matter left to the strategic judgment of the attorney.  The Fifth Circuit exercises deference when scrutinizing counsel's performance, making every effort to eliminate the distorting effects of any hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Therefore, this court finds no reason for issuing the writ based on the contention that Caldwell should have been advised to proceed to a bench trail on stipulated facts in

order to preserve a possibility, but no guarantee, that he would receive a reduction in his sentencing calculation if found guilty.

## C.  The Cumulative Error Assertion

Caldwell next asserts that counsel's errors are cumulative and, together, create a constitutional violation.  This assertion is without merit in this case.  Where this court finds no merit to any of Caldwell's claims of error, the claim of cumulative error also must fail.  *United States v. Andrews*, 22 F.3d 1328, 1345 (5th Cir.), *cert. denied,* 513 U.S. 941, 115 S.Ct. 346, 130 L.Ed.2d 302 (1994);  *United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir.1992) (because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail).

## PETITIONER'S SUBSEQUENT CHALLENGE

Caldwell also seeks to add a claim not anticipated by his original petition under § 2255.  Specifically, Caldwell seeks to add a Sixth Amendment challenge to his conviction,  paralleling the argument raised in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ("Blakely" ).   In *Blakely*, a majority of the United States Supreme Court found that an enhanced sentence imposed by a state court judge in Washington under the Washington Sentencing Reform Act, which was based on facts neither admitted by the defendant nor found by a jury, violated the Sixth Amendment to the United States Constitution.  The *Blakely* opinion expressly reserved judgment as to constitutionality of the Federal Sentencing Guidelines under the Sixth Amendment.  Thus, this court finds no basis for addressing Caldwell's claim that he was entitled to have a jury determine his sentence based solely on the United

16

States Supreme Court's decision in *Blakely* since it was not applied to the Federal Sentencing Guidelines.

On January 12, 2005, the United States Supreme Court revisited this issue in the case of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and concluded that its decision in *Blakely* would be extended to the Federal Sentencing Guidelines. That holding, however, was only made applicable to cases on direct review at the time of the decision. *Id.*  In *Padilla v. United States*, 416 F.3d 424, 425-26 (5th Cir. 2005), the United States Court of Appeals for the Fifth Circuit in the context of a successive § 2255 petition held that the United States Supreme Court did not make *Booker* retroactively applicable to cases on collateral review.  *See also In re Elwood*, 408 F.3d 211, 212-13 (5th Cir. 2005).  While the Fifth Circuit has not yet addressed the applicability of *Booker* to a first § 2255 motion, the Circuits that have considered the question have determined that the *Booker* decision is not retroactive to collateral review cases.  *See Guzman v. United States*, 404 F.3d 139, 141-44 (2nd Cir.2005);  *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir.2005);  *Varela v. United States*, 400 F.3d 864, 866-868 (11th Cir. 2005); and  *McReynolds v. United States*, 397 F.3d 479, 480-81 (7th Cir.), *cert. denied*, --- U.S. ----, 125 S.Ct. 2559, 162 L.Ed.2d 285 (2005).  The First Circuit has taken a different approach in finding non-retroactive application.  In *Cirilo-Munoz v. United States*, 404 F.3d 527 (1st Cir. 2005), the First Circuit held that *Booker* claims cannot be advanced under § 2255 in the absence of a United States Supreme Court decision rendering *Booker* retroactive.

Finally, this court observes that the United States Supreme Court's decision in *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), handed

17

down the same day as *Blakely*, held that its decision in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), could not be applied retroactively on collateral review.  In *Schriro*, the Supreme Court first concluded that *Ring* was a new rule of procedure (as opposed to a substantive rule), and noted the general principle that new rules of procedure do not apply retroactively.  *Schriro*, 124 S.Ct. at 2522-23. The Supreme Court then determined that the rule in *Ring* did not fall within any of the narrow exceptions to the general principle, as set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), including the exception for "watershed rules of criminal procedure" essential to the fairness of the proceedings.  *Schriro*, 124 S.Ct. at 2524-25.  The Supreme Court concluded, therefore, that, "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review."  *Schriro*, 124 S.Ct. 2526.

The instant case is already final on direct review and is now on collateral review.  In light of the foregoing authority, this court finds no basis for permitting Caldwell to amend his petition and add a *Booker* challenge to his conviction and sentence.

## CONCLUSION

Therefore, based on all the foregoing authority and analysis, this court hereby denies Steve Caldwell's petition for habeas corpus relief pursuant to Title 28 U.S.C. § 2255.  The Court also denies him a Certificate of Appealability.  All other pending motions are hereby terminated as moot.

**SO ORDERED, this the 28th day of April, 2006.**

**s/ HENRY T. WINGATE**

**CHIEF UNITED STATES DISTRICT JUDGE**

CRIMINAL NO. 3:98-CR-101WN
CIVIL ACTION NO. 3:03-CV-796WN
Habeas Corpus Petition denied

19